Filed 8/14/25  P. v. Maldonado CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>BILLY RAY SHANEE MALDONADO,<br><br>        Defendant and Appellant. | A169943, A171243<br><br>(Sonoma County<br>Super. Ct. No. SCR335781) |

In 2004, Billy Ray Maldonado was convicted of three crimes including first-degree residential burglary, which was a third strike offense for him under the Three Strikes law.  He received a total prison sentence of 25 years to life, plus a seven-year determinate term based on two prison priors and a serious felony prior.  In 2024, he moved for resentencing pursuant to Penal Code section 1172.75.[1]  The trial court struck Maldonado's prison priors and the serious felony prior but denied his *Romero*[2] motion to strike his strike priors.  The court resentenced Maldonado to 25 years to life and reimposed a $10,000 restitution fine.  In these consolidated appeals, Maldonado raises three claims:  (1) the trial court erroneously denied his *Romero* motion; (2) his counsel provided ineffective assistance in failing to object to the restitution

---

[1]     Further undesignated statutory references are to the Penal Code.

[2]     *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

1

fine and neglecting to ask for a *Dueñas*[3] hearing on his ability to pay; and (3) the trial court erred by failing to calculate his custody credits. In a supplemental brief, Maldonado further argues the restitution fine must be vacated under section 1465.9, subdivision (d).

We remand with directions to the trial court to vacate the restitution fine and to calculate Maldonado's custody credits. We affirm the judgment in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

At a jury trial in 2004, the evidence established that Maldonado entered the victim's attached garage and stole her underwear. Police officers responded to the victim's call and apprehended Maldonado as he attempted to flee the victim's yard. Three pairs of the victim's panties were found on or near Maldonado.

The jury convicted Maldonado of first degree residential burglary (§ 459), prowling (§ 647, subd. (h)), and resisting arrest (§ 148, subd. (a)(1)). The trial court found he had four prior strike convictions: two 1978 convictions for assault with intent to commit murder and for assault with a deadly weapon, and two 1989 convictions for sexual offenses against a minor under 14 years of age (§ 288, subd. (a)).

Due to his four strike priors, Maldonado received a 25-years-to-life indeterminate sentence for the first degree residential burglary offense and a seven-year determinate sentence consisting of two one-year prior prison enhancements (former § 667, subd. (b)) and five years for a serious felony prior (§ 667, subd. (a)(1)). The court also imposed a $10,000 restitution fine under section 1202.4, subdivision (b).

---

[3] *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).

In November 2023, Maldonado moved for resentencing pursuant to section 1172.75, as modified by Senate Bill 483, and made a *Romero* motion to have his strike priors stricken. The People conceded that Maldonado's two prior prison enhancements should be stricken but opposed striking the serious felony prior and the *Romero* motion to strike the strike priors. In February 2024, the trial court struck the prison enhancements (former § 667.5, subd. (b)), as well as the serious felony prior (§ 667, subd. (a)(1)), but denied the *Romero* motion.

The trial court resentenced Maldonado to 25 years to life and ordered "[a]ll previous fines, fees, restitution" reimposed, noting there was a $10,000 restitution fine per section 1202.4. Upon defense counsel's request, the court restated the custody credits as of the time of original sentencing.

In March 2024, Maldonado filed his first notice of appeal (case No. A169943). In May 2024, Maldonado submitted a letter to the trial court seeking a *Dueñas* hearing on his ability to pay the restitution fine under section 1237.2, and for recalculation of his custody credits. By order dated June 21, 2024, the court denied Maldonado's request and alternatively found it lacked jurisdiction over the matter due to the pending appeal. In August 2024, Maldonado filed a second appeal, this time from the court's denial of his May letter request (case No. A171243). We consolidated the two appeals.

## DISCUSSION

### A. *The Trial Court Properly Denied the* Romero *Motion*

Where, as here, a resentencing occurs pursuant to section 1172.75, the trial court retains discretion under *Romero* and section 1385, subdivision (a), to strike or dismiss strike priors for a defendant serving a Three Strikes sentence. (*People v. Rogers* (2025) 108 Cal.App.5th 340, 357–364.)

3

The Three Strikes law " 'was intended to restrict courts' discretion in sentencing repeat offenders.' " (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*), quoting *Romero, supra,* 13 Cal.4th at p. 528.) "To achieve this end, 'the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' " (*Carmony*, at p. 377.)

However, a trial court retains discretion to strike prior convictions under the Three Strikes law in the furtherance of justice. (§ 1385, subd. (a); *Romero, supra*, 13 Cal.4th at pp. 504, 529–530.) In exercising such discretion, the court " 'must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' " (*Carmony*, *supra*, 33 Cal.4th at p. 377, quoting *People v. Williams* (1998) 17 Cal.4th 148, 161.) Thus, the Three Strikes law "creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Carmony,* at p. 378.)

We review the trial court's denial of a motion to strike a prior felony strike conviction for abuse of discretion. (*Carmony*, *supra*, 33 Cal.4th at p. 374.) If the record shows the court " 'balanced the relevant factors and reached an impartial decision in conformity with the spirit of the law,' " we

will affirm its ruling, " 'even if we might have ruled differently in the first instance.' " (*Carmony*, at p. 378.) Generally, "a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id*. at p. 377.) The circumstances must be "extraordinary," such that "no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme." (*Id*. at p. 378.) This means a court will be found to have abused its discretion in failing to strike a prior felony conviction allegation only in limited circumstances, such as where the court was unaware of its discretion or considered impermissible factors. (*Ibid*.) Applying these principles, we see no abuse of discretion here.

In denying the *Romero* motion, the trial court made a thorough record of its reasoning. Because defendant's claims of error focus on discrete aspects of the court's decision, we find it helpful for context to set forth the following relevant portions of the court's reasoning:

"So with respect to what is now the open *Romero* motion related to defendant's strike priors, the court does recognize that there are four strikes, essentially two incidents of two strikes each. Either way, whether there were two strike charges or four strike priors charged, this new offense which is the underlying conviction offense, this case would have been a third strike under today's analysis just like it was at the time of sentencing as [section] 459 first [degree] remains a serious and violent felony.

"So the consideration that this court has made as it relates to the *Romero* motion is that first the trial court did hear and deny a *Romero* motion at the time of sentencing; [¶] That this court has reviewed the nature of those strike priors. And my understanding, and correct me if I'm wrong, is it amounts to two [section] 288(a)s where the strike prior was a crime against

5

a child under the age of 14 and two assaults, one of which was an attempt[ed] murder—I'm not sure exactly how it was charged.  . . . .  [¶] . . . .

"So, with that clarification, I will state even if this court were to consider this as two strike priors, one for the assault event and what's unclear one or two victims in the [section] 288(a) strike priors, nonetheless, the court acknowledges the significance of those underlying crimes that are the basis of those strike priors.

"I've also looked at the comparative risk assessment in the defense exhibits.  I would note that this court's assessment of that documentation indicate[s] a lack[ ] of remorse or acknowledgment from the defendant as it relates to the underlying crime.  He doesn't express any insight as to the nature of the crime, specifically the underlying conduct of the strike priors, including neither their seriousness nor the particular nature of those offense[s], and there seems to be a continual denial factually of the facts underlying those convictions.  There's reference to the antisocial behavior that continues and that there still remains a high or moderate risk of future violence.

"The court also considered the underlying fact of the commitment offense itself which is the [section] 459 first [degree] and the defendant's lifetime criminal history.  I do acknowledge from my review of the defense exhibits defendant does suffer from some major mental illness.  That is not lost on the court.  Furthermore, [he] has suffered childhood trauma.  What's lacking for the court is the sufficient nexus between that trauma and the nature of the crimes that are committed, both the underlying offense here as well as the sexually abusive behavior of strike priors.

6

"This court does find that the dismissal of any or all of defendant's strike priors would be outside the interest of justice. And so the *Romero* motion is denied for all of those reasons."

As recounted, the trial court considered the nature of the prior strike offenses and Maldonado's background, character, and prospects, and it balanced these relevant factors in reasonably concluding that Maldonado fell within the spirit of the Three Strikes law. On this record, we cannot say Maldonado's circumstances are "extraordinary," such that "no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme." (*Carmony*, *supra*, 33 Cal.4th at p. 378.) As we explain below, Maldonado's arguments to the contrary are not persuasive.

Maldonado argues his current offense did not amount to a violent felony. There is no dispute, however, that "[a]ny burglary of the first degree . . . wherein it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary" is statutorily defined as a violent felony. (§ 667.5, subd. (c)(21).) Here, the first amended information alleged that Maldonado entered "an inhabited dwelling house and trailer coach" and "inhabited portion of a building occupied by [the victim], with the intent to commit larceny and any felony." The information also explicitly alleged that the offense is a violent felony within the meaning of section 667.5, subdivision (c).

Maldonado attempts to counter the violent nature of his offense by arguing the amended information's use of the word "occupied" is ambiguous because it does not necessarily mean the victim was present in the residence at the time of the offense. We find this argument unavailing. Not only did the amended information specify that the charged offense is considered a violent felony, but Maldonado points to nothing undermining the evidence

7

that the victim was inside her home when she saw Maldonado in her yard and called the police. Moreover, having received instructions on the elements of first degree residential burglary, the jury was evidently satisfied beyond a reasonable doubt that the victim was present at the residence at the time of the offense. We reject Maldonado's attempt to argue otherwise.

Maldonado also contends that the trial court's factual findings are not supported by the evidence and that it relied on a faulty determination of his "moderate (higher moderate)" risk for future violence based on a comprehensive risk assessment performed by forensic psychologist Jennifer Soares, Ph.D., dated May 30, 2023. At the outset, Maldonado claims Dr. Soares "failed to provide diagnostic support for her assessment of Maldonado's risk of future violence" due to her failure to follow mandated diagnostic protocols in violation of title 15, section 2240 of the California Code of Regulations.

Though "[a] trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence" (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998), that is not the case here.

Title 15, section 2240 of the California Code of Regulations provides in relevant part: "Licensed psychologists employed by the Board of Parole Hearings shall prepare comprehensive risk assessments for use by hearing panels. Psychologists shall consider factors impacting an inmate's risk of violence . . . . The psychologists shall incorporate structured risk assessment instruments . . . that are commonly used by mental health professionals who assess risk of violence of incarcerated individuals." (Cal. Code of Regs, tit. 15, § 2240, subd. (a).) "A risk assessment shall not be finalized until the Chief Psychologist or a Senior Psychologist has reviewed the risk assessment to

8

ensure that the psychologist's opinions are based upon adequate scientific foundation." (*Id.*, subd. (c)(1).)

Contrary to Maldonado's allegations, the record reflects that Dr. Soares's risk assessment was reviewed by a Senior Psychologist whose signature at the end of the assessment implicitly verified that it was based upon adequate scientific foundation. Maldonado also points out the risk assessment evaluated him as being at a "moderate (higher moderate)" risk for future violence, but the resentencing transcript shows the court referencing Maldonado's "high or moderate" risk for future violence. This could simply be an error in transcribing "higher moderate," but even if not, Maldonado fails to show how the court's characterization of the risk assessment materially altered the relevant analysis given all the factors the court considered.[4]

Finally, relying on *People v. Avila* (2020) 57 Cal.App.5th 1134 (*Avila*), Maldonado claims a reversal is mandated because the trial court failed to consider four "highly probative factors" as part of the *Romero* motion: (1) his prior strike convictions were remote; (2) his current crime did not involve actual or threatened violence; (3) his age of 72 at the time of resentencing; and (4) the lack of discipline for any violent conduct in prison since 2012. We are not persuaded.

---

[4]     Relying on *People v. Clancey* (2013) 56 Cal.4th 562 (*Clancey*), Maldonado urges that we remand for the trial court to clarify which risk level it relied upon as the basis for its denial of the *Romero* motion. We decline to do so. *Clancey* is inapposite because the remand order there had been necessitated due to a record that was "fatally ambiguous" as to whether an indicated sentence represented the trial court's "considered judgment as to the appropriate punishment" or was instead the product of an improper plea bargain. (*Clancey*, at pp. 577–578.)

In *Avila*, the defendant had demanded money on different occasions from two different persons selling oranges near a freeway off-ramp, telling one of the vendors he had to pay rent to sell at the location. (*Avila, supra*, 57 Cal.App.5th at p. 1139.) When the vendors refused, the defendant squashed or stomped on bags of their oranges and left. (*Ibid*.) The defendant, who had two strike priors, was convicted of attempted second degree robbery and attempted extortion. (*Ibid*.) The defendant made a *Romero* motion to strike his prior convictions, which the trial court denied. In finding the trial court abused its discretion, the *Avila* court included the following conclusions in its analysis. First, the trial court appeared to agree the strike priors were remote in time (preceding his current convictions by 28 and 26 years) but seemingly questioned whether such remoteness could be considered. (*Id*. at p. 1141.) Second, though noting the defendant had committed his two strike priors when he was 18 and 20 years old, the trial court mistakenly believed it could not consider his youth as a mitigating factor. (*Id*. at pp. 1141–1142.) Third, the trial court went beyond consideration of appropriate factors when it speculated about what might have happened to the two orange vendors had the police not been called, and it erred in mischaracterizing the attempted robbery and attempted extortion offenses as violent crimes. (*Id*. at pp. 1142–1143.) Fourth, because the defendant was 47 when sentenced, the appellate court observed his Three Strikes sentence, coupled with the determinate term he received, meant "he will likely die in prison," which was an "unjust" consequence the trial court appeared not to consider. (*Id*. at p. 1144.) In the words of the *Avila* court, "no reasonable person could agree that the sentence imposed on Avila was just." (*Id*. at p. 1145.)

*Avila* is amply distinguishable. Here, the issue of youth was not a factor in mitigation, as Maldonado was 27 and 38 years old when he

committed his strike priors, and was 52 years old at the time of the commitment offense. Nor does the instant record reflect any misunderstanding by the trial court regarding its discretion. The court acknowledged the significant nature of the four strike priors—two offenses for sex crimes against a minor under the age of 14 and two assault offenses, one of which was attempted murder—and Maldonado's continuing lack of insight as to the seriousness and nature of those offenses and his ongoing denial of their underlying facts. The court also considered the circumstance that the commitment offense was for first degree residential burglary which, as discussed, qualifies as a violent felony unlike the commitment offenses at issue in *Avila*. The court additionally observed that the comparative risk assessment indicated Maldonado's lack of any remorse or acknowledgment for that offense, as well as his antisocial behavior and moderate to high risk of future violence. Though the court acknowledged that Maldonado lived with "some major mental illness" and had suffered childhood trauma, the court found such matters lacking a nexus to his crimes.[5]

---

[5] Maldonado highlights the circumstance that, contrary to the trial court's assessment, Dr. Soares concluded his traumatic experiences "play[ed] a significant role in his criminal behavior." But the trial court concluded Maldonado fell within the spirit of the Three Strikes law after considering the nature and circumstances of the sentencing offense and the strike priors, as well as all the identified particulars of his background, character, and prospects. The single circumstance that the court was not convinced of a nexus was of no moment. Indeed, a court is not required to accept an expert's findings at face value, and the weight given to the *Romero* factors is part of the trial court's discretionary assessment. (See *In re M.V.* (2025) 109 Cal.App.5th 486, 509 [admission or rejection of expert testimony is largely within the court's discretion].) In any event, to the extent Maldonado suggests Dr. Soares's conclusion on the point was in some way mitigating, we note she did not view it that way and had listed Maldonado's "early exposure to instability, physical, emotional, and sexual abuse" among the "[m]ost relevant" and "[s]alient" violence risk considerations.

11

True, the trial court did not explicitly address the remoteness of Maldonado's strike priors. But their dates were known to the court and part of its review of Maldonado's extensive criminal history. And unlike the situation in *Avila*, there is no indication the court believed it could not consider remoteness as a mitigating factor.

Nor are we persuaded by Maldonado's suggestion that the trial court abused its discretion by ignoring the supposedly mitigating value of his advanced age at the time of resentencing and his violence-free conduct in prison since 2012. Unlike the defendant in *Avila*, Maldonado is not likely to die in prison simply due to the resentencing that was imposed. Indeed, Maldonado's appellate opening brief indicates he was denied parole in 2023 and will again be eligible for parole in 2026. That he has not yet been found deserving of parole despite his eligibility presents no parallel to the defendant's situation in *Avila*. Likewise, the circumstance that Maldonado has not been violent in the prison's controlled environment since 2012 does not undermine the court's reliance on the risk assessment's reasons for deeming him a "moderate (higher moderate)" risk for future violence.

In sum, we cannot conclude that "no reasonable people could disagree that [Maldonado] falls outside the spirit of the three strikes scheme." (*Carmony*, *supra*, 33 Cal.4th at p. 378.) As discussed, the trial court's denial of the *Romero* motion finds substantial support in the record, including the determination in the comprehensive risk assessment that Maldonado "has the potential to act out impulsively," "has a history of instability," and is "unable to fully identify triggers for violence," and also that he currently exhibits "antisocial behaviors," "lack of remorse," and an "inability to take responsibility for his actions."

12

B. ***Maldonado's Restitution Fine Must Be Vacated, Rendering his Ineffective Assistance of Counsel Claim Moot***

In July 2025, we granted Maldonado's application for leave to file a supplemental brief addressing whether Assembly Bill No. 1186 (2023–2024 Reg. Sess.) requires that his restitution fine be vacated under newly added section 1465.9, subdivision (d). The People's responsive letter brief concedes the fine should be vacated. We agree.

Effective January 1, 2025, Assembly Bill No. 1186 amended the Penal Code to provide: "Upon the expiration of 10 years after the date of imposition of a restitution fine pursuant to Section 1202.4, the balance, including any collection fees, shall be unenforceable and uncollectable and any portion of a judgment imposing those fines shall be vacated." (§ 1465.9, subd. (d).) Maldanado was originally ordered to pay the $10,000 restitution fine when he was sentenced in 2004. At the February 2024 resentencing hearing, the trial court reimposed the fine. This restitution fine, imposed under section 1202.4, is over 10 years old. Therefore, section 1465.9, subdivision (d), requires that the trial court's 2024 order reimposing the fine be vacated.

Our determination that the fine must be vacated renders moot Maldonado's claim that his counsel performed ineffectively by failing to object to the reimposition of the restitution fine.

C. ***The Trial Court Must Calculate Maldonado's Custody Credits***

Maldonado claims the trial court erred in denying his request to correct the custody credits on the abstract of judgment. The People contend the court did not have jurisdiction to correct the custody credits because Maldonado made his request after he filed his first appeal. Nonetheless, the

People concede the court failed to calculate the days Maldonado spent in actual custody.[6]

Upon modifying a defendant's sentence, a trial court is obligated to determine all actual days the defendant has spent in custody—up to the time of resentencing—and to award those credits in the new abstract of judgment. (*People v. Buckhalter* (2001) 26 Cal.4th 20, 37, 41.) Here, the trial court did not calculate the actual time Maldonado spent in custody, and the amended abstract of judgment reflects the same custody credits identified in the 2004 abstract of judgment. Therefore, we remand for a calculation of Maldonado's actual custody credits and direct that such credits be reflected in an amended abstract of judgment.

## DISPOSITION

We remand with directions to the trial court to vacate the $10,000 restitution fine and to calculate Maldonado's actual custody credits. An amended abstract of judgment should be filed and a copy forwarded to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

_____
Fujisaki, J.

WE CONCUR:

_____
Tucher, P. J.

_____
Rodríguez, J.

*People v. Maldonado* (A169943 & A171243)

---

[6] Because the parties agree the matter should be remanded for correction of the custody credits, we decline to address the jurisdiction issue.